## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **GABRIEL GONZÁLEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 18-cv-03044** |
| **v.** | ) | |
| | ) | |
| **JBS LIVE PORK, LLC;** | ) | |
| **JBS USA, LLC; and** | ) | |
| **SWIFT PORK Co.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>OPINION AND ORDER</u>

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court are Defendants'—JBS Live Pork, LLC ("JBS Live Pork"), JBS USA, LLC ("JBS USA"), and Swift Pork Company ("Swift")—Motion for Summary Judgment (d/e 38) and Plaintiff Gabriel González's Motion for Summary Judgment (d/e 42). The Court finds that Swift did not fulfill its duties under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., when considering Mr. González's request for leave. However, the Court further finds that triable issues remain as to Mr. González's retaliation claim against Swift as well as regarding the issue of Defendants' status as joint employers under the FMLA. Therefore,

Defendants' Motion for Summary Judgment (d/e 38) is DENIED,
and Mr. González's Motion for Summary Judgment (d/e 42) against
Swift is GRANTED IN PART and DENIED IN PART.

## I.    FACTS

### a. General background.

Plaintiff Gabriel González[1] began working for a meat
processing plant in Beardstown, Illinois in 2008.  In 2015, the plant
was acquired by Defendant Swift which then became Mr. González's
employer.  While employed by Swift, Mr. González was subject to an
attendance policy which assessed points of varying amounts
against Swift employees when they were absent from work.  See
JBS Attendance Policy, Pl.'s Ex. B.3 (d/e 42).  Under the policy, an
employee received one attendance point for each half-to-full day's
absence if the employee called in to a computerized system at least
thirty minutes before he was scheduled to begin a shift to notify
Swift of the employee's tardiness or absence.  Id.  An employee also
received one point if he was sent home by Swift's on-site nursing

---

[1] Sadly, Mr. González passed away on June 1, 2021.  His widow, Ms. Pena Garcia, was allowed
to be substituted in as Plaintiff after Defendants failed to respond to her motion seeking the
same.  See Mot. to Substitute Party (d/e 54); Text Order dated 09/21/2021.  Nevertheless, the
Court refers to Mr. González as Plaintiff in this Opinion and Order.

staff for illness.  Id.  Three attendance points were assessed if an employee called in either within thirty minutes before his scheduled shift or did not call in at all.  Id.  The employee was subject to termination if he was assessed ten attendance points or more within a 365-day period.  Id.

Swift's attendance policy also covered instances where an employee requests leave under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.  Under the policy, after an employee notified Swift that the employee would need to take FMLA leave, the employee was required to follow the policy's call-in procedures and would continue to collect attendance points for absences while the request was under consideration by Swift's Human Resources Department.  "Decl. of Donald Holland," Def.'s Ex. B ¶ 13 (d/e 39).  However, any points accumulated while the FMLA request was pending and which were covered by the leave request were removed once the FMLA leave was approved if the employee had properly followed the policy's call-in procedure.

**b. Mr. González's health issues and resulting absences.**

On March 1, 2016, Mr. González experienced a nosebleed while working.  Mr. González was directed to Swift's on-site nursing

station, at which time the on-staff nurse sent him home.  Swift
charged Mr. González one attendance point for the day.

On March 3, 2016, Mr. González experienced a similar
nosebleed and again was sent to the nurse's station, sent home,
and charged one attendance point.  Once home, Mr. González went
with his daughter to the emergency room at Passavant Area
Hospital in Jacksonville, Illinois, where a doctor diagnosed him with
hypertension, prescribed him medication, and advised him to follow
up with his primary care doctor.  See March 3 Passavant Records,
Pl.'s Ex. E (d/e 42).  Mr. González was also given a document titled
"Home Care Instructions," which listed his diagnosis, prescribed
medication, and gave follow-up instructions.  See March 3 Hospital
Note Pl.'s Ex. C.41 (d/e 42).  Mr. González produced that note to
Swift's human resources department on March 4, 2016, at which
time he stated he would be out of work for a few days.  Pl.'s
Statement of Undisputed Material Facts ("PSUMF") ¶ 42, 43 (d/e
42).  Swift charged Mr. González one attendance point for March 4.

Mr. González returned to the Passavant Area Hospital
emergency room the evening of March 7 and was released just
before 3:00 a.m. on March 8.  He submitted a hospital note to

Swift's human resources department later on March 8 and filled out a second Leave Claim Form.  Pl.'s Exs. 15 & 16 (d/e 42).  Mr. González's doctor's note from that evening stated that he was unable to return to work but may return on March 12.  Mr. González did not work March 7, 8, 9, 10, or 11, and Swift charged him a total of seven attendance points over that week.  Def.'s Ex. A(5) (d/e 39).

On March 14, 2016, Mr. González went to Taylor Clinic in Beardstown, Illinois for a doctor's appointment.  He was given a new medication, was told to return for a follow-up appointment in four days, and was told to take off work until March 17.  See Pl.'s Exs. J & 19 (d/e 42).  Mr. González returned to Taylor Clinic for his follow-up appointment on March 18, 2016 at which his hypertension was again determined to be "uncontrolled" and he was given directions to return for another follow-up appointment in two-to-three days.  Pl.'s Ex. K (d/e 42).  Mr. González did not work March 14, 15, 16, 17, or 18, and Swift charged him a total of nine attendance points over that week.  Def.'s Ex. A(5) (d/e 39).

On March 21, 2016, Mr. González returned to Taylor Clinic for his second follow-up appointment.  Pl.'s Ex. L (d/e 42).  His blood

pressure was again noted as "uncontrolled," and he was directed to return for a third appointment in 48 hours and to "keep off work." Id. At the third follow-up on March 23, Mr. González was again noted as having uncontrolled blood pressure and was "[n]ot ready to return to work." Pl.'s Ex. M (d/e 42). Mr. González returned for his final follow-up appointment at Taylor Clinic on March 25, 2016. Pl.'s Ex. N (d/e 42). At that appointment, Mr. González's blood pressure was observed to be "well controlled," and he was cleared to return to work that day. Id. The records also referenced Mr. González's previous Taylor Clinic visits, noting he was absent from work March 14 through March 24. Id. Mr. González did not work March 21, 22, 23, 24, or 25 and Swift charged him a total of eight attendance points over that week. Def.'s Ex. A(5) (d/e 39).

Mr. González also called in sick on March 28, and Swift charged him one attendance point. Def.'s Ex. A(5) (d/e 39). That night, Mr. González went to the emergency room at HSHS St. John's Hospital in Springfield, Illinois ("St. John's"). Pl.'s Ex. O (d/e 42). The Patient Visit Information form produced by St. John's states that he was seen for shortness of breath, that he was given various medications, including intravenous medication, and had

various tests performed, including an electrocardiogram (EKG) and a computerized tomography (CT) scan.  Id.  Mr. González was released from St. John's March 29 with instructions not to return to work until March 30.  Id. ("Work/School Excuse").  Mr. González did not work on March 29, and Swift charged him one attendance point.  Def.'s Ex. A(5) (d/e 39).

### c. Mr. González's Request for Leave form and Certification of Health Care Provider, WH-380-E, form.

On March 7, 2016, Mr. González filled out two forms in which he requested leave under the FMLA for a period of time beginning March 1, 2016 because he was sent home by the nursing staff. "Leave Request Form" Pl.'s Ex. 10 (d/e 42); "Request for Leave" Pl.'s Ex. 12 (d/e 42).  Mr. González also filled out an Authorization to Disclose Health Information for Swift's Human Resources Department to contact his health care providers to collect any information Swift may have needed regarding Mr. González's FMLA request.  Pl.'s Ex. 14 (d/e 42).

Also on March 7, 2016, Swift provided Mr. González multiple forms regarding his request.  A Swift employee provided Mr. González a copy of a U.S. Department of Labor Notice of Eligibility

and Rights & Responsibilities (Family and Medical Leave Act) form.
Def.'s Ex. A(7) (d/e 39).  That form states that Mr. González
requested leave "beginning on 3-1-16" for his own serious health
condition and that he was eligible for FMLA leave, though final
approval was pending.  Id.

A Swift employee also provided Mr. González a letter stating
Mr. González's requested FMLA leave was pending approval for the
dates "3/1/2016 to UNKNOWN."  Def.'s Ex. A(8) (d/e 39); Pl.'s Ex.
11 (d/e 42).  The letter went on to state that Mr. González had until
March 22, 2016 to return a medical certification to support his
FMLA request.  Id.  That form, the "Certification of Health Care
Provider, WH-380-E" was filled out on March 17 and returned to
Swift's Human Resources Department.  Pl.'s Ex B, 132:18–134:14
(d/e 42); Pl.'s Ex. 23 (d/e 42).  The Certification stated that Mr.
Gonzales was treated on March 14, prescribed medication, unable
to perform his job functions, and excused from work from March 14
to March 17.  Pl.'s Ex. 23 (d/e 42); Def.'s Ex. A(9) (d/e 39).

On March 14, Mr. González gave Swift's Human Resources
Department a note from the doctor he saw at the doctor's
appointment Mr. González went to that day at Taylor Clinic.  See

PSUMF ¶¶ 92, 93, & 96 (d/e 42); Pl.'s Ex. 19 (d/e 42). That note asked Swift to excuse Mr. González from work from March 14 to March 17 because of illness. Id. That same day, Swift sent Mr. González a letter denying his request for FMLA leave for March 14, 15, and 16. Pl.'s Exs. 20 & 21 (d/e 42).

On March 22, Swift issued a "Designation Notice" in which Swift denied Mr. González's request for FMLA leave. Pl.'s Ex. 29 (d/e 42). The spaces on the form which would indicate what, if any, additional information was needed for Swift to approve the leave request are blank, and the form does not include the dates of the denied leave or specify which request Swift denied. Id.; Pl.'s Ex. B, 144:20–145:6 (d/e 42). But Swift issued another letter addressed to Mr. González on March 23 which referenced the Designation Notice and again stated that his FMLA request was denied, this time identifying March 14 through March 16 as the dates denied. Pl.'s Ex. 24 (d/e 42). Swift's stated reason for the denial in the March 23 letter is only: "DOES NOT MEET CRITERIA." Id. Nevertheless, Swift's Human Resources Department received a revised copy of Mr. González's March 17 "Certification of Health Care Provider, WH-380-E" form on March 30. Def.'s Ex. E (d/e 39).

This revised copy contained additional specific information regarding Mr. González's treatment and diagnosis from his March 14 visit to Taylor Clinic.  Id.

However, also on March 30, Swift terminated Mr. González's employment for exceeding the ten-point limit per 365-day period. Pl.'s Ex. 28 (d/e 42).  Swift had charged Mr. González twenty-nine total attendance points for missing work between March 1, 2016 until March 30, 2016.  See Def.'s Ex. A(5) (d/e 39).

**d. Procedural Background.**

Mr. González filed suit against JBS Live Pork on March 13, 2018, alleging unlawful interference with Mr. González's FMLA rights and retaliation against him for requesting FMLA leave.  On April 12, 2018, Mr. González filed an Amended Complaint, adding JBS USA and Swift as additional defendants.  JBS Live Pork, JBS USA, and Swift then moved for Summary Judgment—see (d/e 38 & 39)—and Mr. González responded with his own motion for Summary Judgment—see (d/e 42).

## II.    LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
The movant bears the initial responsibility of informing the Court of
the basis for the motion and identifying the evidence the movant
believes demonstrates the absence of any genuine dispute of
material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).
"[S]ummary judgment is the 'put up or shut up' moment in a
lawsuit, when a party must show what evidence it has that would
convince a trier of fact to accept its version of events."  <u>Johnson v.
Cambridge Indus., Inc.</u>, 325 F.3d 892, 901 (7th Cir. 2003).

On that evidence, the Court must determine whether a
genuine dispute of material facts exists.  A genuine dispute of
material fact exists if a reasonable trier of fact could find in favor of
the nonmoving party.  <u>Carroll v. Lynch</u>, 698 F.3d 561, 564 (7th Cir.
2012).  When ruling on a motion for summary judgment, the Court
must construe facts in the light most favorable to the nonmoving
party and draw all reasonable inferences in the nonmoving party's
favor.  <u>Woodruff v. Mason</u>, 542 F.3d 545, 550 (7th Cir. 2008).

The above-stated standards for summary judgment remain
unchanged when considering cross-motions for summary judgment:
the Court must "construe all inferences in favor of the party against

whom the motion under consideration is made." <u>Oneida Nation v.</u>
<u>Vill. of Hobart, Wis.</u>, 371 F. Supp. 3d 500, 508 (E.D. Wis. 2019)
(quoting <u>Metro. Life Ins. Co. v. Johnson</u>, 297 F.3d 558, 561–62 (7th
Cir. 2002)).

### III.   ANALYSIS

In his Amended Complaint (d/e 7), Mr. González alleges that
the above-recited facts amount to two violations of the FMLA:
unlawful interference and retaliation.  Mr. González seeks summary
judgment only against Swift for the two Counts of the Amended
Complaint.  <u>See</u> Pl.'s Mot. for Summ. J. (d/e 42).  All three
Defendants seek summary judgment against Mr. González, arguing
that his interference claim fails because he cannot show he was
prejudiced by the employment termination.  <u>See</u> Def.'s Mot. for
Summ. J. (d/e 39).  Defendants also argue that Mr. González's
retaliation claim fails because Mr. González cannot show
discriminatory or retaliatory intent on Defendants' part when Mr.
González' employment was terminated.

**a. FMLA Interference.**

The FMLA prohibits employers from interfering with,
restraining, or denying an employee from exercising or attempting

to exercise any right provided under the Act.  29 U.S.C. §
2615(a)(1).  One such right is an employee's entitlement to take
leave from work for a total of 12 workweeks during any 12-month
period for the purpose of medical care.  Id. § 2612(a)(1).  "To prevail
on an FMLA-interference claim, a plaintiff must show that (1) he
was eligible for the FMLA's protections, (2) his employer was
covered by the FMLA, (3) he was entitled to leave under the FMLA,
(4) he provided sufficient notice of his intent to take leave, and (5)
his employer denied or interfered with FMLA benefits to which he
was entitled."  Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d
806, 816 (7th Cir. 2015) (cleaned up).  The parties do not dispute
whether Mr. González was an "eligible" employee under the FMLA or
whether Swift was a "covered" employer.  Instead, the parties'
arguments concern (a) whether and to what extent Mr. González
was entitled FMLA leave in March 2016, (b) if he was so entitled,
whether he provided adequate notice of his requested leave for the
applicable dates, and (c) whether any rights under the FMLA to
which Mr. González was entitled were either interfered with or
denied by any of the Defendants.

An employee is entitled to protected FMLA leave if he experiences a "serious health condition that makes [him] unable to perform the functions of" his job.  29 U.S.C. § 2612(a)(1)(D).  A serious health condition is an "illness, injury, impairment, or physical or mental condition that involves" either of two circumstances: "inpatient care in a hospital" or "continuing treatment by a healthcare provider."  Id. at § 2611(11).  Neither Swift nor the other Defendants dispute Mr. González's argument that his hypertension was a "serious health condition" which made him "unable to perform the functions" of his job.  See generally Def.'s Mem. in Supp. of Mot. for Summ. J. (d/e 39); Def.'s Opp'n (d/e 47).  Nor could they.  It is undisputed that Mr. González was sent home by Swift's own nursing staff twice when he experienced nosebleeds caused by his hypertension.  Similarly undisputed are Mr. González's multiple doctor's appointments and emergency room visits made to address his hypertension and the medications he was prescribed at those appointments.  These facts alone are enough to establish that Mr. González's hypertension was a "serious health condition" under the FMLA, entitling him to protected FMLA leave. See 29 C.F.R. §§ 825.113(a) (defining a "serious health condition" as

one involving "inpatient care" or "continuing treatment"), 825.113(c) (defining "continuing treatment" as treatment involving a regimen of prescription medicine), and 825.114 (defining "inpatient care" as an overnight stay in a hospital and any subsequent treatment in connection with such a stay).

However, the parties dispute the extent to which Mr. González was entitled to protected leave, namely, the dates he was entitled to protected leave.  Defendants argue that Mr. González's interference claim fails because he cannot show he was prejudiced by the decision to deny his FMLA leave.  Defendants' arguments are focused only on the dates stated in the March 17 "Certification of Health Care Provider, WH-380-E" form—that is, March 14, 15, and 16.  Defendants argue that even if Mr. González's leave for only those dates were granted, he still would have accumulated enough attendance points to warrant his termination, so Mr. González cannot show he was prejudiced by the denial *for those dates*.

However, those are not the only dates at issue in this case. Mr. González claims he was entitled to FMLA leave for nearly the entire month of March, not just March 14, 15, and 16.  Mr. González argues that Swift should have been on notice of his need

to take intermittent FMLA leave once the Swift nursing staff sent him home for his initial nosebleed.  Furthermore, the "Request for Leave: FMLA" form filled out for Mr. González's request listed "03/01/16" as the start date for the leave of absence and left the end date blank.  Pl.'s Ex. 12 (d/e 42).  Swift acknowledged this when Swift issued two forms on March 7, 2016 regarding Mr. González's requested leave: the U.S. Department of Labor Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act) form—Def.'s Ex. A(7) (d/e 39)—and the March 7 Pending Approval Letter—Pl.'s Ex. 11—both of which state that Mr. González had requested leave beginning March 1.  Lastly, it is undisputed that Mr. González was not given FMLA leave for March 1, 2016 through March 30, 2016.  Therefore, the relevant dates for the FMLA entitlement and interference inquiry in this case are March 1, 2016 through March 30, 2016, not just March 14, 15, and 16.  As a result, whether Mr. González's interference claim succeeds or fails as a matter of law, then, turns on whether Mr. González fulfilled his notice duties put on him by the FMLA for March 1 through March 30, and whether Swift did the same.  Mr. González did.  Swift did not.

The FMLA's implementing regulations outline the duties and
requirements imposed upon both employee and employer once an
employee is determined eligible for FMLA leave.  See generally 29
C.F.R. § 825.100 et seq.  First, in cases such as the present where
the need for leave is unforeseeable, the employee must provide the
employer notice that he intends to take leave as soon as practicable
under the circumstances.  29 C.F.R. § 825.303(a).  The content of
such notice must include "sufficient information for an employer to
reasonably determine whether the FMLA may apply to the leave
request."  Id. at § 825.303(b).  However, failure to expressly assert
FMLA rights or mention the FMLA will not render a request
insufficient or incomplete.  Id.

Once an employee has fulfilled his notice duties, "[t]he burden
then shifts to the employer."  Lutes v. United Trailers, Inc., 950
F.3d 359, 364 (2020).  The employer has the duty to inform the
employee, within five business days after receiving the employee's
request, whether the request will be designated as FMLA-qualifying.
Id. at 364–65 (citing 29 C.F.R. §§ 825.301(a) & 825.300(d)).

An employer may then require an FMLA-qualifying employee to
support his claim for leave by producing a medical certification from

the employee's health care provider, thereby providing the employer
with certain information about the employee's serious health
condition.  29 C.F.R. § 825.305.  An employee may use one of two
standard Department of Labor forms to comply with the
certification requirement, one of which is form WH-380-E.  29
C.F.R. § 825.306(b).  But while an employer may require an
employee use form WH-380-E to be approved for FMLA leave, "an
employee may choose to comply with the certification requirement
by providing the employer with an authorization, release, or waiver
allowing the employer to communicate directly with the health care
provider of the employee."  Id. at § 825.306(e).  Additionally, if the
employer determines that the certification as initially filled out by
the employee is either incomplete or insufficient as defined by the
regulation, the employer "shall state in writing what additional
information is necessary to make the certification complete and
sufficient."  Id. at § 825.305(c).  Only after an employee fails to cure
the required certification by providing the additional information
requested by the employer may the employer deny the employee's
requested FMLA leave without unduly interfering with his protected
rights provided therein.  Id. at § 825.305(d).

Mr. González fulfilled his duties under the FMLA.  Mr. González was sent home by Swift's own nursing staff for a bleeding nose twice: on March 1, 2016 and March 3, 2016.  If that were not enough to put Swift on notice that Mr. González was experiencing a health condition rendering him unable to work and which may require FMLA-protected leave, then the Leave Request Form and Request for Leave forms he filled out on March 7, 2016 certainly provided notice.  See Pl.'s Exs. 10 & 12 (d/e 42); cf. Stevenson v. Hyre Elec. Co., 505 F.3d 720, 725 (7th Cir. 2007) (noting that an employee's statement that his wife was experiencing pregnancy complications would suffice to fulfill the employee notice duty).  Those forms explicitly stated that Mr. González was requesting FMLA leave beginning March 1, 2016.  Therefore, Mr. González fulfilled his notice duty.

Once Mr. González did so, the burden shifted to Swift to inform him whether he qualified for leave.  Swift did so on March 7, 2016 when a Swift employee issued both the Department of Labor Notice of Eligibility form and the letter indicating Mr. González's requested leave was pending approval.  See Def.'s Exs. A(7) & A(8) (d/e 39).  In each, as with Mr. González's request forms, Swift

indicated the request was for a time uncertain beginning March 1, and that the requested leave was FMLA-qualifying.  Id.  In doing so, Swift fulfilled its duty to notify Mr. González of his FMLA-qualifying leave.

However, Swift failed to fulfill its duties with respect to Mr. González's certification.  Swift argues that it was entitled to require Mr. González to produce a complete and sufficient WH-380-E medical certification before approving Mr. González's requested leave.  Swift also argues that the requested FMLA leave should, then, be confined to the information within the four corners of that form.  But while Swift was within its rights under the regulations to require Mr. González to produce a completed WH-380-E form, Mr. González was within his rights to comply with that requirement by providing Swift with an authorization, release, or waiver allowing Swift to communicate directly with his health care provider.  29 C.F.R. § 825.306(e).  Mr. González did so when he filled out the Authorization to Disclose Health Information on March 7, 2016. See Pl.'s Ex. 14 (d/e 42).

Moreover, Swift failed to fulfill its duty to specify in writing the deficiencies Swift saw in Mr. González's certification form WH-380-

E.  The first instance when Swift denied Mr. González's request,
Swift neither provided Mr. González with reasons for the denial nor
stated what missing information Swift required to approve the leave.
See Pl.'s Ex. 29; Pl.'s Ex. B 144:20–145:6 (d/e 42).  The second time
Swift denied Mr. González's request, the only stated reason was
because the request "does not meet criteria."  Pl.'s Ex. 24 (d/e 42).
The denial letter does not specify what criteria are not met or how
Mr. González could have met the criteria required.  Id.  While the
certification WH-380-E form Mr. González submitted contained only
March 14, 15, and 16 as the requested dates, the failure to include
again the originally requested duration—i.e., March 1, 2016 and
on—meant that Mr. González's certification was simply incomplete.
See Kauffman v. Fed. Express Corp., 426 F.3d 880, 887 (7th Cir.
2005); cf. Hansen v. Fincantieri Marine Grp., LLC, 763 F.3d 832,
842 (7th Cir. 2014).  Once Swift had the certification in hand, Swift
had a duty to inform Mr. González "in writing what additional
information [was] necessary to make the certification complete and
sufficient."  29 C.F.R. § 825.305(c); see Hansen, 763 F.3d at 837.
By stating only that the certification "does not meet criteria," Swift
failed to fully advise Mr. González what other information was

required and did not afford Mr. González an adequate opportunity to cure his request as required by 29 C.F.R. § 825.305(c). Kauffman, 426 F.3d at 887. Such failure, followed by a denial of FMLA leave, and resulting termination of employment amount to an interference with protected FMLA rights and a violation of federal law by Swift. Hansen, 736 F.3d at 842 (holding that the Defendant should have sought recertification when the plaintiff's absences were for dates exceeding what was stated in the submitted certification, "rather than simply denying him leave.")

Mr. González has shown that, as a matter of law, the rights guaranteed to him by the FMLA were unlawfully interfered with by Swift when Mr. González was both denied leave and subsequently terminated. Accordingly, Mr. González's Motion for Summary Judgment (d/e 42) is granted as to his FMLA interference claim and Defendants' Motion for Summary Judgment (d/e 38) is denied as to the same.

**b. FMLA Retaliation**.

The parties next move for summary judgment on Mr. González's retaliation claim. In addition to prohibiting employers from interfering with an employee's exercise of his FMLA rights, the

FMLA prohibits employers from retaliating against an employee for exercising, or attempting to exercise, his rights under the FMLA. <u>See</u> 29 U.S.C. §§ 2615(a)(2) & (b); <u>Nicholson v. Pulte Homes Corp.</u>, 690 F.3d 819, 825 (7th Cir. 2012).  In addition to proving entitlement to FMLA protections, a plaintiff claiming FMLA retaliation must also prove discriminatory or retaliatory intent.  <u>Id.</u> (citing <u>Goelzer v. Sheboygan County, Wis.</u>, 604 F.3d 987, 995 (7th Cir. 2010)).  More specifically, to survive a motion for summary judgment on a retaliation claim under the FMLA, a plaintiff must submit evidence showing that employer took an adverse employment action against him because he took FMLA leave to which he was entitled.  <u>Preddie</u>, 799 F.3d at 819 (citing <u>Lucas v. PyraMax Bank, FSB</u>, 539 F.3d 661, 667 (7th Cir. 2008)).

Mr. González argues that his retaliation claim must succeed if his interference claim succeeds, citing only a footnote in <u>Hansen</u> to support his argument.  763 F.3d at 835, n.1.  In that footnote, the Seventh Circuit stated that the plaintiff's retaliation claim in that case stood or fell by the plaintiff's interference claim.  <u>Id.</u>  However, that footnote does not negate the long history of binding precedent in this Circuit holding that FMLA retaliation claimants must prove

discriminatory or retaliatory intent in addition to the denial of FMLA rights. <u>Nicholson</u>, 690 F.3d at 825; <u>Goelzer</u>, 604 F,3d at 995; <u>Lewis v. School Dist. #70</u>, 523 F.3d 730, 741 (7th Cir. 2008); <u>Kauffman</u>, 426 F.3d at 884; <u>King v. Preferred Tech. Grp.</u>, 166 F.3d 887, 891 (7th Cir. 1999).  Moreover, the central holding in <u>Hansen</u> related to whether plaintiffs in interference cases must provide expert testimony to prove a serious health condition.  763 F.3d at 835–36. The Court determines that the footnote Mr. González cites is, at best, dicta and neither binding nor instructive on this Court's decision in this case.

Mr. González also relies on the Seventh Circuit's decision in <u>Preddie v. Bartholomew Consolidated School Corporation</u>.  799 F.3d at 816.  In that case, also decided on summary judgment, the Seventh Circuit held that an issue of fact existed as to whether the defendant retaliated against the plaintiff for taking FMLA leave.  <u>Id.</u> The Court relied on the plaintiff's submitted and undisputed evidence which showed that the plaintiff "was terminated, at least in part, based on his record absences, and that [the defendant] knew that many of those absences were attributable to" the plaintiff's own serious health condition and that of his son.  <u>Id.</u> at

819.  Those circumstances alone, the Court held, raised a genuine issue of material fact from which a reasonable jury could conclude in the plaintiff's favor.  The Preddie Court then reversed the district court's grant of summary judgment and remanded for further proceedings below.  Id.

The undisputed material facts in this case are identical to those in Preddie.  Swift continued to assess attendance points against Mr. González while knowing Mr. González had pending claims for FMLA leave.  That Mr. González's termination came as a result of those attendance points similarly raises an issue of fact as to the motivation behind the decision to terminate Mr. González's employment.  Mr. González has offered evidence that he was terminated, at least in part, because of the attendance points he accrued for absences Swift knew were attributable to Mr. González's hypertension.  When viewing the undisputed material facts in the light most favorable to Mr. González as to his retaliation claim, the Court finds triable issues the Court cannot decide on summary judgment.  Therefore, both Mr. González's Motion for Summary Judgment (d/e 42) and Defendants' Motion for Summary Judgment (d/e 38) are each denied as to the FMLA retaliation claim.

**c. Joint Employers under the FMLA.**

Lastly, Defendants also request summary judgment that all three—JBS Live Pork, JBS USA, and Swift—are not joint employers under the FMLA.  While the FMLA does not specifically define when a joint employer relationship may exist, and therefore when each employer may be liable for FMLA violations, the FMLA's implementing regulations do.  Under 29 C.F.R. § 825.106(a), a joint employer relationship may exist where "two or more businesses exercise some control over the work or working conditions of the employee."  Whether the businesses each exercise enough control over the employees is a fact-intensive inquiry akin to a totality-of-the-circumstances test.  Moldenhauer v. Tazewell Pekin Consol. Communs. Ctr., 536 F.3d 640, 644 (7th Cir. 2008).  Factors for determining the employer relationship include "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payments, (3) determined the rate and method of payment, and (4) maintained employment records," though no one factor is determinative.  Id. (internal quotation and additional citation omitted).

Mr. González only opposes Defendants' motion on this issue;
he does not seek summary judgment on the joint employer issue.
Therefore, the facts stated above are viewed in the light most
favorable to Mr. González.  When viewed in that light, the Court
finds that genuine issues of material fact exist from which a
reasonable jury could find in Mr. González's favor.  For example, the
very FMLA documents discussed in this case also list "JBS," "JBS
Pork," or "JBS USA" as the employer, and the employee handbook
and attendance policy Swift used to charge Mr. González
attendance points are labelled as "JBS Employee Handbook" and
"JBS Attendance Policy," respectively.  See Def. Exs. A(1), A(2), A(8),
& A(9) (d/e 39).  Defendants also each used a shared human
resources services unit in the management of their employees
which assisted in creating and maintaining employment practices.
Pl.'s Ex. R. 63:18–64:10 (d/e 45).  This shared unit of human
resource employees also negotiated the employment contract which
covered Mr. González during his employment.  Id. at 31:12–32:7.
When viewed in the light most favorable to Mr. González, a
reasonable jury could find that Defendants are joint employers

under the FMLA.  Accordingly, Defendants' Motion for Summary Judgment (d/e 38) on this issue must be denied.

## IV.   CONCLUSION

In sum, Mr. González has shown that, as a matter of law, Defendant Swift did not fulfill its duties as to Mr. González's request for FMLA leave.  However, triable issues remain for Mr. González's retaliation claim as well as his claim that Defendants are joint employers.  Accordingly, Defendants' Motion for Summary Judgment (d/e 38) is DENIED.  For the same reasons, Mr. González's Motion for Summary Judgment (d/e 42) against Swift is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**
**ENTERED:  February 7, 2022**
**FOR THE COURT:**

*/s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**